# 15-3135(L)

## 15-3151(XAP), 22-1060(CON)

*To Be Argued By*:
BENJAMIN H. TORRANCE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket Nos. 15-3135(L), 15-3151(XAP), 22-1060(CON)

◄◆►

EVA WALDMAN, REVITAL BAUER, individually and as natural guardian of plaintiffs Yehonathon Bauer, Binyamin Bauer, Daniel Bauer and Yehuda Bauer, SHAUL MANDELKORN, NURIT MANDELKORN, OZ JOSEPH GUETTA, minor, by his next friend and guardian Varda Guetta, VARDA GUETTA, individually and as natural guardian of plaintiff Oz Joseph Guetta, NORMAN GRITZ, individually and as personal representative of the Estate of David Gritz, MARK I. SOKOLOW, individually and as a natural guardian of Plaintiff Jamie A. Sokolow, RENA M. SOKOLOW, individually and as a natural guardian of plaintiff Jamie A. Sokolow, JAMIE A. SOKOLOW, minor, by her next friends and guardian Mark I. Sokolow and Rena M. Sokolow,

*(Caption continued on inside cover)*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR INTERVENOR-APPELLANT

BRIAN M. BOYNTON,
*Principal Deputy
Assistant Attorney
General*
SHARON SWINGLE,
*Attorney, Appellate Staff
Civil Division
Department of Justice*

DAMIAN WILLIAMS,
*United States Attorney for the
Southern District of New York,
Attorney for Intervenor-Appellant.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2703

BENJAMIN H. TORRANCE,
    *Assistant United States Attorney,
    Of Counsel.*

LAUREN M. SOKOLOW, ELANA R. SOKOLOW, SHAYNA EILEEN GOULD, RONALD ALLAN GOULD, ELISE JANET GOULD, JESSICA RINE, SHMUEL WALDMAN, HENNA NOVACK WALDMAN, MORRIS WALDMAN, ALAN J. BAUER, individually and as natural guardian of plaintiffs Yehonathon Bauer, Binyamin Bauer, Daniel Bauer and Yehuda Bauer, YEHONATHON BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, BINYAMIN BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, DANIEL BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, YEHUDA BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, RABBI LEONARD MANDELKORN, KATHERINE BAKER, individually and as personal representative of the Estate of Benjamin Blutstein, REBEKAH BLUTSTEIN, RICHARD BLUTSTEIN, individually and as personal representative of the Estate of Benjamin Blutstein, LARRY CARTER, individually and as personal representative of the Estate of Diane ("Dina") Carter, SHAUN COFFEL, DIANNE COULTER MILLER, ROBERT L COULTER, JR., ROBERT L. COULTER, SR., individually and as personal representative of the Estate of Janis Ruth Coulter, CHANA BRACHA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, ELIEZER SIMCHA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, ESTHER ZAHAVA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, KAREN GOLDBERG, individually, as personal representative of the Estate of Stuart Scott Goldberg/natural guardian of plaintiffs Chana Bracha Goldberg, Esther Zahava Goldberg, Yitzhak Shalom Goldberg, Shoshana Malka Goldberg, Eliezer Simcha Goldberg, Yaakov Moshe Goldberg, Tzvi Yehoshua Goldberg, SHOSHANA MALKA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, TZVI YEHOSHUA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, YAAKOV MOSHE GOLDBERG, minor, by her next friend and guardian Karen Goldberg, YITZHAK SHALOM GOLDBERG, minor, by her next friend and guardian Karen Goldberg, NEVENKA GRITZ, sole heir of Norman Gritz, deceased,

*Plaintiffs-Appellants,*

UNITED STATES OF AMERICA,

*Intervenor-Appellant,*

—v.—

PALESTINE LIBERATION ORGANIZATION, PALESTINIAN AUTHORITY, aka Palestinian Interim Self-Government Authority and/or Palestinian Council and/or Palestinian National Authority,

*Defendants-Appellees,*

YASSER ARAFAT, MARWIN BIN KHATIB BARGHOUTI, AHMED TALEB MUSTAPHA BARGHOUTI, AKA Al-Faransi, NASSER MAHMOUD AHMED AWEIS, MAJID AL-MASRI, AKA Abu Mojahed, MAHMOUD AL-TITI, MOHAMMED ABDEL RAHMAN SALAM MASALAH, AKA Abu Satkhah, FARAS SADAK MOHAMMED GHANEM, AKA Hitawi, MOHAMMED SAMI IBRAHIM ABDULLAH, ESTATE OF SAID RAMADAN, deceased, ABDEL KARIM RATAB YUNIS AWEIS, NASSER JAMAL MOUSA SHAWISH, TOUFIK TIRAWI, HUSSEIN AL-SHAYKH, SANA'A MUHAMMED SHEHADEH, KAIRA SAID ALI SADI, ESTATE OF MOHAMMED HASHAIKA, deceased, MUNZAR MAHMOUD KHALIL NOOR, ESTATE OF WAFA IDRIS, deceased, ESTATE OF MAZAN FARITACH, deceased, ESTATE OF MUHANAD ABU HALAWA, deceased, JOHN DOES, 1-99, HASSAN ABDEL RAHMAN,

*Defendants.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

The PSJVTA's Deemed-Consent Provision Is
    Sufficient to Establish Personal Jurisdiction . .  2

    A.   The PSJVTA Provides a Valid Basis for
         Deemed Consent to Jurisdiction . . . . . . . . .  2

    B.   Congress's Powers Concerning Foreign
         Affairs Are an Important Factor in
         Determining the Reasonableness of
         Personal Jurisdiction Under the PSJVTA  12

    C.   The Fifth Amendment Allows Broader
         Assertions of Personal Jurisdiction Than
         Permitted Under the Fourteenth
         Amendment. . . . . . . . . . . . . . . . . . . . . . . .  14

    D.   The PSJVTA Does Not Violate
         Separation of Powers . . . . . . . . . . . . . . . .  15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

ii

PAGE

# TABLE OF AUTHORITIES

*Cases*:

*Bank Markazi v. Peterson,*
  578 U.S. 212 (2016) . . . . . . . . . . . . . . . . . . . . 15, 16

*Bremen v. Zapata Off-Shore Co.,*
  407 U.S. 1 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Brown v. Lockheed Martin Corp.,*
  814 F.3d 619 (2d Cir. 2016) . . . . . . . . . . . . . . . . . 3

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . . . . . 3

*College Savings Bank v. Florida Prepaid*
  *Postsecondary Education Expense Board,*
  527 U.S. 666 (1999) . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Douglass v. Nippon Yusen Kabushiki Kaisha,*
  46 F.4th 226 (5th Cir. 2022) . . . . . . . . . . . . . 14, 15

*Douglass v. Nippon Yusen Kabushiki Kaisha,*
  996 F.3d 289 (5th Cir. 2021) . . . . . . . . . . . . . . . 14

*Insurance Corporation of Ireland v.*
  *Compagnie des Bauxites de Guinee,*
  456 U.S. 694 (1982) . . . . . . . . . . . . . . . . . 3, 4, 5, 6

*International Shoe Co. v. Washington,*
  326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . . . 13

*Kleindienst v. Mandel,*
  408 U.S. 753 (1972) . . . . . . . . . . . . . . . . . . . . . . 11

iii

PAGE

*Klieman v. PA,*
    923 F.3d 1115 (D.C. Cir. 2019). . . . . . . . . . . . . . . 4

*Koontz v. St. Johns River*
    *Water Management District,*
    570 U.S. 595 (2013). . . . . . . . . . . . . . . . . . . . . . . 11

*Litecubes, LLC v. Northern Light Products, Inc.,*
    523 F.3d 1353 (Fed. Cir. 2008). . . . . . . . . . . . . . . 10

*Livnat v. PA,*
    851 F.3d 45 (D.C. Cir. 2017). . . . . . . . . . . . . . . . . 4

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . 13

*Moran v. Burbine,*
    475 U.S. 412 (1986). . . . . . . . . . . . . . . . . . . . . . . . 7

*National Federation of*
    *Independent Business v. Sebelius,*
    567 U.S. 519 (2012). . . . . . . . . . . . . . . . . . . . . . . 11

*Nixon v. Administrator of General Services,*
    433 U.S. 425 (1977). . . . . . . . . . . . . . . . . . . . . . . 16

*Schneckloth v. Bustamonte,*
    412 U.S. 218 (1973). . . . . . . . . . . . . . . . . . . . . . . . 5

*Shaffer v. Heitner,*
    433 U.S. 186 (1977). . . . . . . . . . . . . . . . . . . . . . . . 2

*Shatsky v. PLO,*
    955 F.3d 1016 (D.C. Cir. 2020). . . . . . . . . . . . . . . 4

*Sun Forest Corp. v. Shvili,*
    152 F. Supp. 2d 367 (S.D.N.Y. 2001) . . . . . . . . . . 6

iv

PAGE

*Tennessee Wine & Spirits*
   *Retailers Ass'n v. Thomas,*
   139 S. Ct. 2449 (2019). . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. O'Brien,*
   926 F.3d 57 (2d Cir. 2019) . . . . . . . . . . . . . . . . 5, 7

*United States v. Taylor,*
   745 F.3d 15 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . 7

*United States v. Velez,*
   354 F.3d 190 (2d Cir. 2004) . . . . . . . . . . . . . . . . . 7

*United States. Waldman v. PLO,*
   835 F.3d 317 (2d Cir. 2016) . . . . . . . . . . . . . . 4, 13

*Virginia Office for Protection &*
   *Advocacy v. Stewart,*
   563 U.S. 247 (2011). . . . . . . . . . . . . . . . . . . . . . . . 6

*Waldman v. PLO,*
   925 F.3d 570 (2d Cir. 2019) . . . . . . . . . . . . . . . . . 4

*Wellness Int'l Network v. Sharif,*
   575 U.S. 665 (2015). . . . . . . . . . . . . . . . . . . . . . . . 7

*Statutes*:

18 U.S.C. § 2334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE SECOND CIRCUIT

### Docket No. 15-3135(L),
### 15-3151(xap), 22-1060(con)

---

## REPLY BRIEF FOR INTERVENOR-APPELLANT

---

## Preliminary Statement

The PSJVTA adopts a straightforward rule: if, following the statute's enactment, the Palestinian Authority or Palestine Liberation Organization (or their successors or affiliates) meet either of two criteria—continuing to make payments that Congress has determined incentivize terrorist attacks harming United States nationals, or maintaining a specified presence or activities on United States soil—they will be deemed to have consented to the jurisdiction of U.S. courts so that American victims of terrorism may seek to hold them to account. Nothing about that is an "end-run" around previous judicial decisions or a "ruse" (Defendants-Appellees' Brief ("Defs.' Br.") 1–2)—much less a violation of due process. Rather, Congress has adopted a constitutionally sound mechanism for deciding if particular foreign entities have consented to adjudication in U.S. courts. By placing the PA and PLO on advance notice of the consequence of their actions, limiting the PA's and PLO's consent to only one specific type of civil action under the Anti-Terrorism Act,

2

and narrowly defining the activities that will be deemed to express consent in a way that clearly connects those actions and those defendants to U.S. interests and to the ATA civil action that may proceed, Congress has ensured that the PA and PLO are knowingly and voluntarily consenting to personal jurisdiction of U.S. courts consistent with due process. And in doing so, Congress has furthered important foreign-policy goals that lie in the exclusive domain of the Legislative and Executive Branches. Whether under the existing case law that imports the personal jurisdiction test of the Fourteenth Amendment, or under the broader scope that the Fifth Amendment provides to determine the exercise of federal judicial power, Congress has acted well within its constitutional authority.

## A R G U M E N T

### The PSJVTA's Deemed-Consent Provision Is Sufficient to Establish Personal Jurisdiction

### A. The PSJVTA Provides a Valid Basis for Deemed Consent to Jurisdiction

In arguing that U.S. courts lack personal jurisdiction over them, the PA and PLO largely rely on their lack of contacts with the United States. (Defs.' Br. 20–28). But personal jurisdiction based on consent can exist entirely apart from jurisdiction based on contacts. Even in a case where a defendant has "simply had nothing to do with" a forum, whether that defendant has expressly or impliedly consented to jurisdiction poses a different question. *Shaffer v. Heitner*, 433

3

U.S. 186, 216 (1977); *accord Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("a party may simply consent to a court's exercise of personal jurisdiction . . . notwithstanding the remoteness from the state of its operations and organization").

Thus, while the PA and PLO cite *Burger King Corp. v. Rudzewicz* for the proposition that there must be a "substantial connection" between the defendant and the forum (Defs.' Br. 21 (quoting 471 U.S. 462, 474–76 (1985))), they fail to point out that in that case the Supreme Court expressly noted it was only considering an "out-of-state defendant who has not consented to suit," 471 U.S. at 472. Similarly, they criticize the government for relying on "hornbook 'minimum contacts' caselaw" (Defs.' Br. 56), but ignore the fact that those precedents articulate principles of "fair play and substantial justice" that apply even in cases that do not involve contacts with the forum (Brief for Intervenor-Appellant ("Gov't Br.") 18–19). No case holds that in order to waive the personal jurisdiction requirement by consent, a defendant must also have some level of contact with a forum. *See id.* at 472 n.14 (because personal jurisdiction is a "waivable right," a litigant can consent to a court's personal jurisdiction through a "'variety of legal arrangements'" (quoting *Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982))). Rather, personal jurisdiction by consent is consistent with the requirements of due process if it is "not 'unreasonable and unjust.'" *Id.* (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

4

For that reason, it is irrelevant that some pre-PSJVTA cases held that U.S. courts lack personal jurisdiction over the PA and PLO. Some of those cases held that a "district court could not constitutionally exercise either general or specific personal jurisdiction over" the PA and PLO due to their lack of contact with the United States. *Waldman v. PLO*, 835 F.3d 317, 331, 344 (2d Cir. 2016); *accord Shatsky v. PLO*, 955 F.3d 1016, 1036–37 (D.C. Cir. 2020); *Klieman v. PA*, 923 F.3d 1115, 1123–26 (D.C. Cir. 2019); *Livnat v. PA*, 851 F.3d 45, 56–57 (D.C. Cir. 2017). Others determined that the plaintiffs in those cases could not establish the factual predicates of the PSJVTA's predecessor statute, the Anti-Terrorism Clarification Act of 2018. *Waldman v. PLO*, 925 F.3d 570, 573–75 (2d Cir. 2019); *Klieman*, 923 F.3d at 1127–31. But none of these cases applied a minimum-contacts analysis to decide if there is personal jurisdiction by consent, or otherwise addressed the constitutional requirements for personal jurisdiction by express or constructive consent.

The PA and PLO agree that the personal jurisdiction requirement can be waived by knowing and voluntary consent. (Defs.' Br. 28–35). They contend, however, there was no such consent here—despite the fact that the PSJVTA plainly put them on notice that certain activities within their control would be deemed consent if the PA and PLO engaged in them going forward. But Congress may impose "rules that establish legal consequences to a party's own behavior," including rules that certain behavior will be considered a waiver of personal jurisdiction. *Bauxites*, 456 U.S. at 705. The PA and PLO suggest that the holding of

5

*Bauxites* can only apply to the particular context at issue in that case, namely, a party's failure to comply with court-ordered jurisdictional discovery. (Defs.' Br. 31–32). But the Court's language, as well as its long and general discussion of "the nature of personal jurisdiction" without reference to the particulars of the case before it, make clear that its principles apply more widely. *See* 456 U.S. at 701–05 ("In sum, the requirement of personal jurisdiction may be intentionally waived, or *for various reasons* a defendant may be estopped from raising the issue." (emphasis added)).

More particularly, the Supreme Court's acceptance of implied waiver of personal jurisdiction in *Bauxites* is incompatible with the PA and PLO's insistence that "constructive" consent is subject to a stringent standard, or requires a reciprocal exchange. (Defs.' Br. 28–35). The PA and PLO rely on *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666 (1999), for that claim. (Defs.' Br. 33–35). But *College Savings Bank* did not address personal jurisdiction, and Supreme Court precedent makes clear that different waiver standards apply to different constitutional rights. *Schneckloth v. Bustamonte*, 412 U.S. 218, 241 (1973) (applying different waiver standards due to "vast difference" between constitutional rights at issue); *United States v. O'Brien*, 926 F.3d 57, 76 (2d Cir. 2019) (same). The particularly "stringent" test for waivers of Eleventh Amendment rights at issue in *College Savings Bank*, which arise out of the competing interests and governmental obligations of two sovereigns, do not translate to the context of personal jurisdiction. *College Savings Bank*, 527 U.S. at 675 (quotation marks omitted); *see*

6

*id.* at 678 ("there is no place for the doctrine of constructive waiver *in our sovereign-immunity jurisprudence*" (emphasis added; quotation marks omitted)).[1]

As for reciprocity, while a defendant's receipt of a benefit may demonstrate its consent to personal jurisdiction, "voluntary consent to jurisdiction need not be supported by consideration." *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 380 (S.D.N.Y. 2001) (Lynch, J.). Where a provision deeming certain conduct to constitute consent to personal jurisdiction otherwise comports with due process, a defendant need

---

[1]  In a footnote, the PA and PLO maintain that because personal jurisdiction and the Eleventh Amendment—at issue in *College Savings Bank*—are both "jurisdictional defenses," their waiver standards should be equated. (Defs.' Br. 35 n.9). But the term "jurisdiction" carries different meanings in the two contexts. *See Bauxites*, 456 U.S. at 701 (noting that by "speaking . . . in general terms of 'jurisdiction,'" party had failed to recognize distinct nature of personal jurisdiction). The Eleventh Amendment confirms the sovereign immunity of the states by providing that the "Judicial power of the United States" does not extend to unconsented-to suits against them. U.S. Const. am. 11; *see Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). In contrast, "[t]he personal jurisdiction requirement . . . represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Bauxites*, 456 U.S. at 702. The difference in waiver standards reflects that distinction.

only be "made aware of the need for consent and the right to refuse it, and still voluntarily" proceed. *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 685 (2015) (quotation marks omitted). In other contexts, too, the waiver of a right is valid even in the absence of consideration or exchange. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986) (waiver of *Miranda* rights is valid if "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," and is "the product of a free and deliberate choice rather than intimidation, coercion, or deception"); *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (same); *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004) (applying same definition to waiver of inadmissibility of statements made during plea discussions); *O'Brien*, 926 F.3d at 76 (consent to search is given "freely and voluntarily" under Fourth Amendment if not "the product of duress or coercion"; upholding consent to search obtained without any exchange). The fact that the government "may . . . condition" a benefit upon a waiver of personal jurisdiction or other rights, and that the acceptance of that benefit signals agreement to that exchange, does not imply that an exchange is the only means of obtaining such consent. *College Savings Bank*, 527 U.S. at 686); (*contra* Defs.' Br. 34).

Because the PSJVTA gave clear notice to the PA and PLO that they would be deemed to consent to personal jurisdiction in ATA civil cases if they continued to engage in specified activities, which themselves are tied to U.S. interests in addressing terrorism that harms U.S. nationals, the PA's and PLO's own conduct demonstrates their knowing and voluntary consent. It

8

makes no difference whether the PA and PLO "'previously engaged'" in those activities, or whether Congress designated the deemed-consent activities on that basis (Defs.' Br. 40–41 (quoting SPA 16))—Congress indisputably can attach new legal consequences to a person's acts going forward, and the PSJVTA only applies to the PA's and PLO's actions that take place after grace periods following its enactment have elapsed. 18 U.S.C. § 2334(e)(1). It further makes no difference that the payments occur "under Palestinian law" or "do not require authorization from the U.S. government." (Defs.' Br. 41–42; *see also* Defs.' Br. 45–46 (explaining policy rationales for payments)). To say that "[a]ny decision to continue making such payments reflects Defendants' own domestic laws and policy choices, rather than some implicit agreement to knowingly and voluntarily consent to jurisdiction" (Defs.' Br. 42) simply begs the question—Congress has made clear that however the decision to continue the payments occurred, they would be deemed consent by these *sui generis* entities to the jurisdiction of U.S. courts.

And while the PA and PLO insist that the payments are "completely unconnected" to the United States forum (Defs.' Br. 42), that ignores the terms of the PSJVTA. Only payments made to the families or representatives of persons who committed acts of terrorism "that injured or killed a national of the United States" will trigger consent to jurisdiction. 18 U.S.C. § 2334(e)(1)(A). Only lawsuits under the ATA, brought to redress injuries to U.S. nationals caused by terrorism, are within the PSJVTA's personal jurisdiction provisions. And the only defendants who may be sued are the PA and PLO and their successors and affiliates

9

—the entities that made the payments. Congress has thus tailored the PSJVTA to ensure that the activities that are deemed consent to personal jurisdiction are closely linked to the actions in U.S. courts that will be allowed to proceed.

As for the PSJVTA's provision regarding presence and activities in the United States, the PA and PLO insist that there is no link between those activities and ATA claims or attacks on U.S. nationals, relying on the lack of any such link in the statutory text. (Defs.' Br. 53–54). But the link is apparent from the broader context. The PA and PLO disregard decades of history, during which Congress and the Executive Branch have made clear that the PA's and PLO's ability to operate in the United States depends on their commitment to peace in the Middle East and their renunciation of terrorism. (Gov't Br. 21–24). Congress's and the Executive Branch's decisions regarding the permissibility of PA and PLO activity in the United States are thus closely connected to the United States' efforts to halt, deter, and disrupt international terrorism harming U.S. nationals—goals Congress also furthered in enacting the ATA to permit civil actions by U.S. victims of terrorism. By making the PA and PLO amenable to suit in U.S. courts in civil ATA actions, Congress has both strengthened the anti-terrorism effect of the ATA and further clarified its longstanding position that the PA's and PLO's ability to operate in the United States is linked to anti-terrorism objectives.

The PA and PLO also accuse the government of "conflat[ing]" the United States' authority to legislate regarding matters outside its borders with the power

10

of its courts to adjudicate claims arising abroad, and contend that the previous cases holding that the PA and PLO lack sufficient contacts with the United States have already decided the question of adjudicative authority. (Defs.' Br. 43–44). But there is no dispute that a federal court must have personal jurisdiction over a defendant to adjudicate a case against it, which is conceptually separate from Congress's power to legislate.[2] The government's opening brief never contended otherwise; it only invoked the legislative power to address extraterritorial activities in its argument about the more expansive scope of personal jurisdiction under the Fifth, as opposed to the Fourteenth, Amendment—not in addressing the permissibility of the PSJVTA under precedents governing consent to personal jurisdiction. (Gov't Br. 30–35).

The PA and PLO surmise that allowing the PSJVTA's deemed-consent rule to stand would permit Congress to "circumvent modern due-process doctrine" by "repackag[ing] the contacts with the forum found insufficient to support the exercise of jurisdiction as ground for 'deemed consent' to jurisdiction." (Defs.' Br. 58–59). That is incorrect. While personal jurisdiction by consent is not subject to the limits of minimum contacts, it must be knowing and voluntary and

—————————

[2] The PA and PLO rely on dicta in a footnote in the Federal Circuit's decision in *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1363 n.10 (Fed. Cir. 2008). (Defs.' Br. 44). But that case says nothing more than that a court must have personal jurisdiction to adjudicate an extraterritorial dispute.

11

remains subject to other applicable constitutional requirements, including comportment with "fair play and substantial justice." The PA and PLO's hypothetical, in which a state enacts a statute declaring that a company distributing vehicles for sale in the state is deemed to have consented to personal jurisdiction, would fail that test. A state generally lacks the power to exclude out-of-state participants from commerce and thereby preventing the existence of a "national market for goods and services." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019). A corporation would not be acting voluntarily if its choice were between giving up its right to participate in that national market and "consenting" to general jurisdiction in a particular state. *See National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 577, 581 (2012) (where legitimacy of Congress's power to impose a condition on funding provided to a state turns on "whether the State voluntarily and knowingly accepts," condition is impermissible where it amounts to "a gun to the head" (quotation marks omitted)).

In contrast, Congress has the power to exclude the PA and PLO entirely from the United States. *Kleindienst v. Mandel*, 408 U.S. 753, 765–67 (1972). And with that power comes the power to place conditions on those entities' presence in the United States, at least so long as those conditions are reasonable and proportional. *See Koontz v. St. Johns River Water Management District*, 570 U.S. 595, 605–06 (2013). The PSJVTA satisfies that test: the consent it requires is narrow—limited to *sui generis* foreign entities, applicable only to ATA claims, and in furtherance of U.S.

foreign policy interests in addressing terrorism that harms U.S. nationals. And its limited demand must be seen in light of both the federal government's constitutional responsibilities for, and broad authority over, international relations as well as its duties related to the protection of U.S. nationals abroad—government interests reasonably linked to the deemed-consent provisions of the PSJVTA—as well as the long history of limitations on the PA's and PLO's operations in the United States arising from Congress's and the Executive's concerns regarding the PLO's historical support for terrorism.[3] In those circumstances, the PSJVTA's deemed consent provisions are reasonable and constitutional.

## B. Congress's Powers Concerning Foreign Affairs Are an Important Factor in Determining the Reasonableness of Personal Jurisdiction Under the PSJVTA

The PA and PLO challenge the government's invocation of its foreign-affairs power, casting it as an end-run around constitutional limits. (Defs.' Br. 60–61). But contrary to their argument, Congress has not

––––––––––

[3] The PA and PLO's speculation that if the PSJVTA is upheld, Congress or state legislatures will enact similar statutes (Defs.' Br. 62–63), is irrelevant. Any future legislation must be assessed on its own merits, as must be the PSJVTA. Whether or not such legislation is enacted, it does not affect the narrow scope of the PSJVTA or have any impact on its constitutionality.

13

attempted to expand personal jurisdiction beyond what the Constitution allows. Rather, the federal government's extensive power in matters of foreign affairs is an important factor in determining whether the assertion of personal jurisdiction "comports with 'traditional notions of fair play and substantial justice'— that is, whether it is reasonable under the circumstances of the particular case." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *accord Waldman*, 835 F.3d at 331.

As described above, those circumstances include Congress's aim to make the ATA an effective remedy for persons injured by acts of terrorism; the long history of Congress's and the Executive's policies regarding the PA and PLO, and the U.S. government's unique relationship with those *sui generis* non-sovereign entities; and the federal government's duties related to the protection of U.S. nationals abroad. Considering the links between the PSJVTA's provision regarding presence in the United States and the federal government's broader power over foreign policy does not "depart from ordinary due-process requirements," nor does it require the Court to "defer" to Congress's judgment regarding the statute's constitutionality or "abdicat[e] . . . the judicial role" (Defs.' Br. 61 (quotation marks omitted)); rather, it is fully consistent with the Fifth Amendment's standards. And while the PA and PLO offer suggestions for alternative ways to address terrorism (Defs.' Br. 63–65), that is not their decision to make; Congress and the Executive Branch, not foreign entities, determine the foreign policy of the

United States. Congress is entitled to the Court's deference in its decision to further its foreign-policy objectives by allowing ATA actions against those defendants that are deemed to have consented to personal jurisdiction under the terms of the PSJVTA.

## C. The Fifth Amendment Allows Broader Assertions of Personal Jurisdiction Than Permitted Under the Fourteenth Amendment

The PA and PLO correctly note that the Fifth Circuit has vacated its prior decision in *Douglass v. Nippon Yusen Kabushiki Kaisha*, 996 F.3d 289 (5th Cir. 2021), and, after the government's brief in this case was filed, issued an en banc decision holding that the personal jurisdiction standards under the Fifth and Fourteenth Amendments "mirror each other," 46 F.4th 226, 235 (5th Cir. 2022), *petition for cert. pending*, no. 22-562 (filed Dec. 14, 2022). But five judges of that court dissented, recognizing that "principles of interstate federalism" distinguish the analysis under the Fourteenth and Fifth Amendments. *Id.* at 263 (Elrod, J., dissenting).

"[T]he United States' constitutional powers and special competence in matters of foreign affairs and international commerce, in contrast to the limited and geographically cabined sovereignty of each of the several States, would permit the exercise of federal judicial power in ways that have no analogue at the state level." *Id.* at 264 (Elrod, J., dissenting) (quotation marks omitted). "Fourteenth Amendment due process thus prevents states from unjustifiably trenching on others' sovereign prerogative to have their courts hear

15

cases concerning defendants residing or doing business within state borders." *Id*. at 265. But "[b]ecause the Fifth Amendment, unlike the Fourteenth Amendment, applies to federal courts and is not shaped by principles of federalism," and because Congress has authority to determine the United States' relations with foreign countries, the personal jurisdiction of federal courts hearing federal causes of action is not limited by the Fifth Amendment in the same way as the personal jurisdiction of state courts is by the Fourteenth Amendment. *Id*.; *accord id*. at 282 (Higginson, J., dissenting) ("Fourteenth Amendment constraints on personal jurisdiction [are] born out of federalism concerns"). The greater scope that the Fifth Amendment gives Congress to determine the personal jurisdiction of federal courts further demonstrates that the PSJVTA is constitutional.

### D. The PSJVTA Does Not Violate Separation of Powers

Finally, the PA and PLO contend that the PSJVTA "usurps judicial power by directing courts to *always* find consent if its factual predicates are met—regardless of whether those activities satisfy the standard for consent under the Due Process Clause." (Defs.' Br. 68). It does not. Congress has simply, and sensibly, specified actions that are to be deemed consent; doing so poses no constitutional problem. The statute "does not impinge on judicial power," as it is permissible for Congress to "direct[ ] courts to apply a new legal standard to undisputed facts." *Bank Markazi v. Peterson*, 578 U.S. 212, 230 (2016). Since the activities specified in the PSJVTA constitute valid consent under the

16

knowing-and-voluntary due process standard described above, the deemed consent is valid, and nothing about the PSJVTA infringes on the judicial function or alters the meaning of due process. Nor does the PSJVTA "legislatively supersede" the previous decisions in *Waldman* and other cases (Defs.' Br. 70 (quotation marks omitted)): those cases still stand for the proposition that the PA and PLO are not subject to personal jurisdiction under a minimum-contacts test, but say nothing about whether they can be deemed to have consented based on their conduct following the enactment of the PSJVTA.

For similar reasons, it is not accurate to say the PSJVTA "define[s] the scope of constitutional protections for individual groups." (Defs.' Br. 62). The PSJVTA does not change constitutional protections for anyone. By its terms, it applies only to the PA, PLO, and their successors and affiliates, but "[e]ven laws that impose a duty or liability upon a single individual or firm are not on that account invalid." *Bank Markazi*, 578 U.S. at 233–34 (quotation marks omitted; listing cases upholding "diverse laws that governed one or a very small number of specific subjects"); *accord Nixon v. Administrator of General Services*, 433 U.S. 425, 471–72 (1977) (upholding statute despite "the fact that it refers to appellant by name"). As previously explained, Congress has repeatedly enacted legislation specifically regulating the relationship of the United States with the PA and PLO. (Gov't Br. 21–23 (listing statutes)). That the PSJVTA does the same does not make it constitutionally suspect.

17

## CONCLUSION

**The judgment of the district court should be reversed.**

Dated:     New York, New York
           February 17, 2023

                         Respectfully submitted,

                         DAMIAN WILLIAMS,
                         *United States Attorney for the*
                         *Southern District of New York,*
                         *Attorney for Intervenor-Appellant.*

                         BENJAMIN H. TORRANCE,
                         *Assistant United States Attorney,*
                              *Of Counsel.*

BRIAN M. BOYNTON,
*Principal Deputy Assistant Attorney General*

SHARON SWINGLE,
*Attorney, Appellate Staff*
*Civil Division*
     *Department of Justice*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 4004 words in this brief.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By: BENJAMIN H. TORRANCE,
*Assistant United States Attorney*