# 15-3135(L)

## 15-3151(XAP), 22-1060(C)

**UNITED STATES COURT OF APPEALS**
*for the*
**SECOND CIRCUIT**

---

**MARK I. SOKOLOW, *ET AL.*,**

*Plaintiffs-Appellants,*

**UNITED STATES OF AMERICA,**

*Intervenor-Appellant,*

v.

**PALESTINE LIBERATION ORGANIZATION, *ET AL.*,**

*Defendants-Appellees.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK IN 2004 CIV. 397
HONORABLE GEORGE B. DANIELS

---

## REPLY IN SUPPORT OF MOTION TO REMAND
## WITH INSTRUCTIONS TO REINSTATE JUDGMENT

---

If this case is reopened, the Court "'must apply the law in effect at the time it renders its decision.'" *Henderson v. United States*, 568 U.S. 266, 271 (2013). The law in effect at that time would include the PSJVTA and *Fuld*, which establish personal jurisdiction over defendants.

Defendants' alternative arguments for a new trial have been fully briefed. They are meritless. Thus, the Court should end this long-running dispute by remanding to the district court for reinstatement of that court's judgment in plaintiffs' favor.

## I.   THE SUPREME COURT'S REMAND REOPENED THIS CASE

When the Supreme Court remands a case "for further proceedings" after this Court has issued its mandate, this Court routinely applies the law as announced by the Supreme Court without considering whether to recall its mandate. The Supreme Court's remand "for further proceedings" *is* the judicial act that reopens the case. "When a judgment has been set aside," "[t]he case remains open," and "the court must apply the law as it stands, including any intervening precedents." *Ditto v. McCurdy*, 510 F.3d 1070, 1077 (9th Cir. 2007).

Defendants do not cite a single case in which this Court received a remand "for further proceedings," yet *still* deemed the case "closed." The Court should not do so here.

## II.   THE *SARGENT* FACTORS COMPEL REOPENING THIS CASE

This Court has "the power to reopen a case at any time"—a power it exercises if the circumstances satisfy the four-factor test articulated in *Sargent v. Columbia Forest Products, Inc.*, 75 F.3d 86, 89-90 (2d Cir. 1996). *Sargent* is the pathmarking case defining the applicable standards. Defendants do not cite *Sargent*. They do not even mention the *Sargent* factors. That stunning omission all but concedes that the *Sargent* test compels reopening this case.

**1.** The threshold *Sargent* factor is a "'supervening change in governing law that calls into serious question the correctness of the court's judgment.'" *Id.* at 90. That factor is met here in two different, mutually reinforcing ways.

**First,** a new federal statute qualifies as a "supervening change." *See ACLU v. Dep't of Def.*, No. 06-3140 (June 10, 2009); *Bryant v. Ford Motor Co.*, 886 F.2d

2

1526, 1530 (9th Cir. 1989). Defendants attempt to distinguish *ACLU* and *Bryant* on their timing. Opp. 7. But that misses the point. *ACLU* and *Bryant* stand for the proposition that a federal statute is indisputably the *kind* of "change in law" that meets the first *Sargent* factor. *Sargent* itself cites *Bryant* as an example of a case involving a "supervening change in governing law." 75 F.3d at 90.

**Second,** a "supervening change" includes a judicial decision showing that this Court "had misinterpreted the [governing] law." *Davis v. Lawrence-Cedarhurst Bank*, 206 F.2d 388, 389 (2d Cir. 1953) (cited in *Sargent*). The *Fuld* decision meets that standard. In 2016, this Court held that "the minimum contacts and fairness analysis is the same under the Fifth Amendment and the Fourteenth Amendment in civil cases." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (*Waldman I*). That holding was outcome determinative: The Court dismissed the case because the minimum-contacts standard was not met. *Id.* at 332-44.

In *Fuld*, the Supreme Court held that *Waldman I* "applied the wrong constitutional test" because "the Due Process Clause of the Fifth Amendment does not incorporate the Fourteenth Amendment minimum contacts standard." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 23 (2025). Since *Waldman I* held that personal jurisdiction over defendants was lacking under the minimum-contacts test, it is "unquestionably at odds with" the Supreme Court's "subsequent" holding that no minimum-contacts test applies. *Sargent*, 75 F.3d at 90.

To be sure, *Waldman I* identified "two parts" to the due process test: "'minimum contacts'" and "'reasonableness.'" 835 F.3d at 331. But *Fuld* also addressed

3

reasonableness, 606 U.S. at 23-24, identifying three relevant interests in the context of this case:

- ***Interest of the Forum***: "the Federal Government has an exceedingly compelling interest … in providing a forum for American [terror] victims to hold the perpetrators of such acts accountable," *id*. at 24;

- ***Interest of the Plaintiffs***: "American plaintiffs have a strong interest in seeking justice through an ATA damages action in U.S. courts," *id*.;

- ***Interest of the Defendants***: it would be "implausible" to think that defendants would bear "an unfair or unmanageable burden" or did not receive fair notice since "they have litigated ATA suits here for decades" and received "clear notice" in the PSJVTA, *id.* at 24-25.

Thus, *Fuld* resolves the "reasonableness" inquiry.

Defendants argue that before the PSJVTA's enactment, they lacked notice that they might face federal jurisdiction for participating in terror attacks. Opp. 15. Not so. When defendants engaged in the terrorist activity at issue here, they had *already* been subjected to personal jurisdiction in U.S. cases arising out of their terrorist activity abroad. *See Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 88 (D.R.I. 2001); *Klinghoffer v. S.N.C. Achille Lauro*, 795 F. Supp. 112, 114 (S.D.N.Y. 1992); *see also United States v. Palestine Liberation Org.*, 695 F. Supp. 1456, 1461 (S.D.N.Y. 1988) ("We have no difficulty in concluding that the court has personal jurisdiction over the PLO…."). No case had gone the other way.

Defendants also argue that the ATA "does not purport to independently create personal jurisdiction." Opp. 16. That is incorrect. Defendants received service of

process pursuant to the ATA's nationwide service provision, 18 U.S.C. § 2334(a), and service under such a statute "establishes personal jurisdiction." Fed. R. Civ. P. 4(k)(1)(C); *see Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991) (nationwide service provision "confers personal jurisdiction" over defendants served "within the United States").

*Fuld*'s reasoning shows why service under the ATA's nationwide service provision established personal jurisdiction: "When Congress has undertaken to enact a nationwide service statute applicable to a certain class of disputes, that statute should be afforded substantial weight as a legislative articulation of federal social policy." 606 U.S. at 20-21 (cleaned up). Such a statute "ensures, as part of a broader foreign policy agenda, that Americans injured or killed by acts of terror have an adequate forum in which to vindicate their right to ATA compensation." *Id.* at 21. This reasoning is unquestionably at odds with *Waldman I*'s holding that "meeting the statutory requirement for service of process" fails to "establish personal jurisdiction" because "minimum contacts" "applies even when federal service-of-process statutes are satisfied." 835 F.3d at 343.

In short, under *Fuld*'s reasoning, personal jurisdiction has *always* existed in this case because "the Constitution does not change from year to year," and judicial decisions "are supposed to conform to it." *Danforth v. Minnesota*, 552 U.S. 264, 286 (2008) (cleaned up).

**2.** The second *Sargent* factor is met because plaintiffs preserved the personal jurisdiction issue. *See Sargent*, 75 F.3d at 90. Defendants do not dispute this.

**3.** The third *Sargent* factor is met because there was no "substantial lapse of time" between the Supreme Court's denial of certiorari and plaintiffs' motion to recall the mandate. *See id.*

Defendants try to muddy the waters by emphasizing that nine years have passed since this Court issued its mandate, Opp. 4, but *Sargent* measured the relevant time from "the denial of the petition for certiorari" to the date when "the motion to recall the mandate was filed," 75 F.3d at 90. Defendants concede that this case "closed" only "when the Supreme Court denied certiorari." Opp. 20. Plaintiffs moved to recall the mandate six months later. This Court has reopened cases after much longer periods. *See, e.g.*, *Wingate v. Gives*, 725 F. App'x 32, 35 (2d Cir. 2018) (five years); *Davis v. United States*, 643 Fed. App'x 19, 21-22 (2d Cir. 2016) (four years); *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 72 n.3 (2d Cir. 2019) (21 months); *see also Thai-Lao Lignite (Thailand) Co. v. Lao People's Democratic Republic*, 864 F.3d 172, 189 (2d Cir. 2017) (stating that ten years "might" be too long).

**4.** The fourth factor requires the Court to consider "the equities." *Sargent*, 75 F.3d at 90; *see Greater Bos. Television Corp. v. FCC*, 463 F.2d 268, 279 (D.C. Cir. 1971) (power to recall mandate is "deeply rooted [in] equity jurisprudence").

The equities concern judicial economy, fairness to plaintiffs, the public interest, and finality. Each strongly supports recalling the mandate.

**a. Judicial Economy.** Judicial economy overwhelmingly favors reinstating the unanimous jury verdict. Where, as here, "a district court has proceeded to final judgment, considerations of finality, efficiency, and economy become overwhelm-

6

ing, and federal courts must salvage jurisdiction where possible." *United Republic Ins. Co. v. Chase Manhattan Bank*, 315 F.3d 168, 170 (2d Cir. 2003) (cleaned up). Defendants claim to be against "endless litigation," Opp. 8, but accepting their position will result in a lengthy retrial and years of appeals—the epitome of "endless litigation."

**b. Fairness to Plaintiffs.** Fairness to the terror-victim plaintiffs strongly favors reopening the case to avoid retrial. Terror victims suffer "serious prejudice" when subjected to "the wrenching process of testifying again." *Gilmore v. Palestinian Interim Self-Governing Auth.*, 675 F. Supp. 2d 104, 111 (D.D.C. 2009) (cleaned up), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016); *accord* Amicus Br. of Strength to Strength, Dkt. No. 487. Defendants nowhere address this compelling factor.

**c. Public Interest.** The PSJVTA's text strongly indicates that U.S. public policy would be *furthered* by reopening the case. Congress conspicuously made the statute effective for cases pending on or after August 31, 2016—the day before this Court decided this case. PSJVTA § 903(d)(2). The stated legislative purpose was "to provide relief for victims of terrorism." *Id.* § 903(d)(1)(A). And Congress expressed its preference that plaintiffs whose claims had been dismissed for lack of personal jurisdiction receive "just compensation" without "unnecessary or protracted litigation." *Id.* § 903(b)(4) (sense of Congress).

These views merit "great respect" because of "Congress's prerogative to balance opposing interests and its institutional competence to do so." *Salazar v. Buono*, 559 U.S. 700, 717 (2010) (plurality opinion) (cleaned up). Defendants attempt to distinguish *Salazar* as a case involving reconsideration of a judgment granting

injunctive relief, rather than reopening of a money judgment. That distinction misses the point, which is that a congressional expression of policy about "a specific controversy" merits "deference" from the Judiciary, *id.*, not that Congress can *force* the Judicial Branch to reopen a closed case.[1]

**d. Finality.** The interest in finality heavily favors granting the motion. Doing so will end this long-running dispute. Declining to do so will launch years of litigation in plaintiffs' identical backup case, which remains stayed pending the outcome of these proceedings. That is the polar opposite of finality.

Defendants claim "profound interests in repose." Opp. 12. Nonsense. In what world does a party obtain repose by demanding to retry a case? Defendants never had an expectation of repose anyway, because they received a dismissal *without prejudice* at a time when the statute of limitations was open. And within weeks of the denial of certiorari, they began opposing legislation that ultimately provided for jurisdiction over them. Mot. 16 n.5, Dkt. No. 631. Where a party "knew proceedings to set [the judgment] aside … were ongoing," as here, "finality interests [do] not stand in the way of" recalling the mandate. *Thai-Lao Lignite*, 864 F.3d at 189.

Defendants have twice made the same "finality" argument to the Supreme Court, which rejected it in circumstances reflecting its own judgment on the equities. Following the PSJVTA's enactment, defendants argued that granting plaintiffs'

---

[1] Defendants argue at length that Congress did not *itself* reopen the judgment. Opp. 18-25. Plaintiffs never argued otherwise. Whether to reopen a closed case is a judicial decision, not a legislative one. Plaintiffs argue only that the PSJVTA *authorizes* the Judiciary to reopen the case and *encourages* it to do so because that would serve important national interests. Defendants ignore those points.

petition for certiorari would be "trampling on the court of appeals' discretionary decision on finality." Br. in Opp. at 2, *Sokolow v. Palestine Liberation Org.* (U.S. No. 19-764). But the Supreme Court nevertheless issued a GVR order, 140 S. Ct. 2714 (2020), reflecting its judgment that "the equities of the case" justified further consideration, *see Lawrence v. Chater*, 516 U.S. 163, 168 (1996). After this Court struck down the PSJVTA, Defendants again raised "finality" in opposing certiorari. Br. in Opp. at 2, *Fuld v. Palestine Liberation Org.* (U.S. No. 24-20). The Supreme Court again exercised its discretion to order further review. 125 S. Ct. 610 (2024).

### III. DEFENDANTS' ARGUMENTS FOR RETRIAL ARE MERITLESS

Defendants have two alternative arguments for retrial, both of which were fully addressed in the merits briefs. Defendants' attempt to salvage these arguments in their motion papers is unavailing.

*First*, as explained in plaintiff's 2023 merits reply, Mot. App'x at A-254 to A-260, Dkt. No. 631, defendants' "forever-void-judgment" theory founders on the rule that courts apply intervening statutes conferring or ousting jurisdiction on appeal regardless of whether the district court lacked jurisdiction. *E.g., Andrus v. Charlestone Stone Prods. Co.*, 436 U.S. 604, 608 n.6 (1978); *United States v. Alabama*, 362 U.S. 602, 604 (1960); *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 101 (1992) (Thomas, J., concurring) ("statutes altering jurisdiction are to be applied to pending cases"); *United States v. Union Gas Co.*, 832 F.2d 1343, 1357 (3d Cir. 1987) (applying new jurisdiction-granting statute on remand from Supreme

9

Court), *aff'd*, 491 U.S. 1 (1989).

Defendants' forever-void-judgment theory also fails because a party can "los[e] its personal jurisdiction objection through … conduct" during appellate proceedings if the conduct "amount[s] to a legal submission to the jurisdiction of the court." *Corporación Mexicana de Mantenimiento Integral S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 100-01 (2d Cir. 2016) (cleaned up). Contrary to defendants' claim, this does not require a "time machine." Opp. 5-6. Submission to jurisdiction may occur "at any stage of a proceeding, including … on appeal." *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1029 (D.C. Cir. 2020) (cleaned up). In 2020, defendants elected to take actions that they knew would bring them within the terms of the PSJVTA.[2] This Court should not shield them from the jurisdictional consequences of that election.

***Second***, defendants try to revive their expert-testimony argument by citing a handful of unpublished district-court opinions, most prominently *In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570 (GBD), 2025 WL 2476303 (Aug. 28, 2025), a decision by Judge Daniels. Reply on Mot. for Suppl. Briefing 3-4, Dkt. No. 641. These decisions simply apply well-established standards in other circumstances. They do not remotely show that Judge Daniels abused his discretion by applying those *same* standards to the facts of *this* case. Defendants also advert to the 2023 amendment to Rule 702, but the version of the rule "in effect at the time of …

---

[2] Defendants' assertion that they ended their pay-for-slay program in 2025 highlights the voluntary nature of their conduct in prior years. However, the assertion is *dehors* the record, deemed false by expert observers, and, in any event, irrelevant under 18 U.S.C. § 2334(e)(2).

trial" governs, and the "2023 amendments do not meaningfully affect [the] analysis" anyway. *D'Pergo Custom Guitars v. Sweetwater Sound, Inc.*, 111 F.4th 125, 140 n.11 (1st Cir. 2024). Moreover, as shown in plaintiffs' merits reply, defendants waived their *Daubert* objections; Judge Daniels applied Rule 702 correctly; and defendants cannot show prejudicial error. Mot. App'x at A-290 to A-311, Dkt. No. 631. Defendants' citation of these authorities belies desperation.

## CONCLUSION

This Court should VACATE its 2016 judgment, REMAND to the district court with instructions to reinstate judgment on the jury verdict, and AWARD plaintiffs their costs.

Dated: September 18, 2025
New York, New York

Respectfully submitted,

Allon Kedem
John P. Elwood
Dirk C. Phillips
Stephen K. Wirth
Daniel Yablon
Arnold & Porter
   Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942-6234

Brian Williams
Arnold & Porter
   Kaye Scholer LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
(303) 833-2322

Kent A. Yalowitz
   *Kent.Yalowitz@arnoldporter.com*
Nicole L. Masiello
Arnold & Porter
   Kaye Scholer LLP
250 West 55th Street
New York, NY 10019
(212) 836-8344

*Counsel for Plaintiffs-Appellants*

12

## CERTIFICATE OF COMPLIANCE WITH FRAP 27

I hereby certify that the foregoing motion contains 2,596 words (including footnotes and excluding caption and signature block), according to the Word Count feature in Microsoft Word.

Kent A. Yalowitz